CILENTI & COOPER, PLLC
Justin Cilenti (GC2321)
Peter H. Cooper (PHC4714)
60 East 42nd Street – 40th Floor
New York, NY 10165
T. (212) 209-3933
F. (212) 209-7102
info@jcpclaw.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X

JOSEFINA RAMOS PENA,

Plaintiff,

-against-

RICO POLLO #2 RESTAURANT CORP. d/b/a RICO POLLO II, JUAN PUNTIEL, and VICTOR ARIAS,

Defendants.

-----------------------------------------------------------------------X

Case No. 26-CV-7472

**FLSA COMPLAINT**

Jury Trial Demanded

Plaintiff, JOSEFINA RAMOS PENA ("Plaintiff"), by and through her undersigned attorneys, Cilenti & Cooper, PLLC, files this Complaint against defendants RICO POLLO #2 RESTAURANT CORP. d/b/a RICO POLLO II, JUAN PUNTIEL, and VICTOR ARIAS (collectively referred to herein as the "Individual Defendants") (RICO POLLO #2 RESTAURANT CORP. and the Individual Defendants are collectively referred to herein as the "Defendants"), and states as follows:

## INTRODUCTION

1. Plaintiff alleges that, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), she is entitled to recover from Defendants:

(a) unpaid overtime compensation, (b) liquidated damages, (c) prejudgment and post-judgment interest, and (d) attorneys' fees and costs.

2. Plaintiff further alleges that, pursuant to the New York Labor Law, she is entitled to recover from Defendants: (a) unpaid minimum wages, (b) unpaid overtime compensation, (c) liquidated and statutory damages pursuant to the New York Labor Law and the New York State Wage Theft Prevention Act, (d) prejudgment and post-judgment interest, and (e) attorneys' fees and costs.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4. Venue is proper in the Eastern District pursuant to 28 U.S.C. § 1391 because the conduct making up the basis of the complaint took place in this judicial district.

## PARTIES

5. Plaintiff is a resident of Kings County, New York.

6. Defendant, RICO POLLO #2 RESTAURANT CORP., is a domestic business corporation organized under the laws of the State of New York, with a principal place of business at 3352 Fulton Street, Brooklyn, New York 11208.

7. Defendant, RICO POLLO #2 RESTAURANT CORP., owns and operates a restaurant, known as "Rico Pollo II," located at 3352 Fulton Street, Brooklyn, New York 11208 (hereinafter, the "Restaurant").

8. Defendant, JUAN PUNTIEL, is the owner, officer, shareholder, director, supervisor, managing agent, and proprietor of RICO POLLO #2 RESTAURANT CORP., who actively participates in the day-to-day operation of the Restaurant and acted intentionally and maliciously and is an employer pursuant to the FLSA, 29 U.S.C. § 203(d) and Regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as New York Labor Law § 2 and the Regulations thereunder, and is jointly and severally liable with RICO POLLO #2 RESTAURANT CORP.

9. Defendant, VICTOR ARIAS, is the General Manager of RICO POLLO #2 RESTAURANT CORP., who actively participates in the day-to-day operation of the Restaurant and acted intentionally and maliciously and is an employer pursuant to the FLSA, 29 U.S.C. § 203(d) and Regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as New York Labor Law § 2 and the Regulations thereunder, and is jointly and severally liable with RICO POLLO #2 RESTAURANT CORP.

10. The Individual Defendants jointly exercise control over the terms and conditions of their employees' employment, in that they have and have had the power to: (i) hire and fire employees, (ii) determine rates and methods of pay, (iii) determine work schedules, (iv) supervise and control the work of the employees, and (v) maintain employment records.

11. At least within the three (3) most recent years relevant to the allegations herein, RICO POLLO #2 RESTAURANT CORP. was, and continues to be, an "enterprise engaged in commerce" within the meaning of the FLSA in that it (i) has and has had employees engaged in commerce or in the production of goods for commerce, or that handle, sell, or otherwise work on goods or materials that have been moved in or

produced for commerce, and (ii) has and has had an annual gross volume of sales of not less than $500,000.

12. Defendants employed Plaintiff to work as a counter person/server, busser, and porter at the Restaurant from on or about August 13, 2020, until on or about November 17, 2026.

13. The work performed by Plaintiff was essential to the business operated by Defendants.

14. Defendants knowingly and willfully failed to pay Plaintiff her lawfully earned minimum wages in direct contravention of the FLSA and New York Labor Law.

15. Defendants knowingly and willfully failed to pay Plaintiff her lawfully earned overtime compensation in direct contravention of the FLSA and New York Labor Law.

16. Plaintiff has satisfied all conditions precedent to the institution of this action, or such conditions have been waived.

## STATEMENT OF FACTS

17. Defendant JUAN PUNTIEL hires employees to work as managers and/or supervisors to participate in the day-to-day operation of the Restaurant.

18. Defendant JUAN PUNTIEL hired defendant, VICTOR ARIAS, to work as the General Manager of the Restaurant, and was one of Plaintiff's direct supervisors. Through authority granted to him by Mr. Puntiel, Mr. Arias is primarily in charge of running the day-to-day operation of the Restaurant, including, but not limited to hiring and firing employees, setting employee work schedules, and setting employee rates of pay.

19. Defendant JUAN PUNTIEL himself also actively participates in the day-to-day operation of the Restaurant. For instance, Mr. Puntiel personally supervises and directs the work of the employees, including the managers and supervisors who also directly supervise the employees, and instructs the employees how to perform their jobs.

20. Although defendant JUAN PUNTIEL provides managers and supervisors with some authority to effectively run the day-to-day operation of the Restaurant, including the hiring and firing of employees, Mr. Puntiel creates, implements, and approves all business policies and makes all crucial business decisions, including decisions concerning the maximum number of hours the employees work, the amount of pay that the employees are entitled to receive, and the manner and method by which the employees are to be paid.

21. On or about August 13, 2020, Defendants hired Plaintiff to work as a counter person/server, busser, and porter at the Restaurant.

22. Neither at the time of hire nor anytime thereafter did Defendants provide Plaintiff with a written wage notice setting forth, among other things, her regular hourly rate of pay, any tip credit deduction, and corresponding overtime rate of pay.

23. Plaintiff worked for Defendants in those capacities until on or about November 17, 2026.

24. From the beginning of her employment and continuing through in or about March 2021, Plaintiff worked seven (7) days per week, and her work schedule consisted of eight (8) hours per day from 4:00 p.m. until 12:00 a.m.

25. During this period, Plaintiff was not paid proper minimum wages or overtime compensation. During this period, Plaintiff was paid, in cash, at the rate of $50

per day ($350 per week) straight time for all hours worked and worked fifty-six (56) hours per week. Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

26. Beginning in or about April 2021 and continuing through in or about July 2021, Plaintiff worked seven (7) days per week, and her work schedule consisted of eight (8) hours per day from 4:00 p.m. until 12:00 a.m.

27. During this period, Plaintiff was not paid proper minimum wages or overtime compensation. During this period, Plaintiff was paid, in cash, at the rate of $60 per day ($420 per week) straight time for all hours worked and worked fifty-six (56) hours per week. Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

28. Beginning in or about August 2021 and continuing through in or about March 2022, Plaintiff worked five (5) days per week, and her work schedule consisted of eight (8) hours per day from 4:00 p.m. until 12:00 a.m.

29. During this period, Plaintiff was not paid proper minimum wages. During this period, Plaintiff was paid, in cash, at the rate of $60 per day ($300 per week) and worked forty (40) hours per week.

30. Beginning in or about April 2022 and continuing through in or about July 2023, Plaintiff worked five (5) days per week, and her work schedule consisted of eight (8) hours per day from 4:00 p.m. until 12:00 a.m.

31. During this period, Plaintiff was not paid proper minimum wages. During this period, Plaintiff was paid, in cash, at the rate of $70 per day ($350 per week) and worked forty (40) hours per week.

32. Beginning in or about August 2023 and continuing through in or about February 2024, Plaintiff worked five (5) days per week, and her work schedule consisted of eight (8) hours per day from 3:00 p.m. until 11:00 p.m.

33. During this period, Plaintiff was not paid proper minimum wages. During this period, Plaintiff was paid, in cash, at the rate of $75 per day ($375 per week) and worked forty (40) hours per week.

34. Beginning in or about March 2024 and continuing through in or about June 2024, Plaintiff worked five (5) days per week, and her work schedule consisted of eight (8) hours per day from 3:00 p.m. until 11:00 p.m.

35. During this period, Plaintiff was not paid proper minimum wages. During this period, Plaintiff was paid, in cash, at the rate of $85 per day ($425 per week) and worked forty (40) hours per week.

36. Beginning in or about July 2024 and continuing through in or about August 2024, Plaintiff worked five (5) days per week, and her work schedule consisted of eight (8) hours per day from 3:00 p.m. until 11:00 p.m.

37. During this period, Plaintiff was not paid proper minimum wages. During this period, Plaintiff was paid, in cash, at the rate of $90 per day ($450 per week) and worked forty (40) hours per week.

38. Beginning in or about September 2024 and continuing through in or about April 2025, Plaintiff worked two (2) days per week, and her work schedule consisted of eight (8) hours per day from 3:00 p.m. until 11:00 p.m.

39. During this period, Plaintiff was not paid proper minimum wages. During this period, Plaintiff was paid, in cash, at the rate of $90 per day ($180 per week) and worked sixteen (16) hours per week.

40. Plaintiff did not work for Defendants between in or about May 2025 and in or about July 2025 due to medical reasons.

41. Upon returning to work in or about August 2025 and continuing through in or about December 2025, Plaintiff worked one (1) day per week, and her work schedule consisted of eight (8) hours per day from 4:00 p.m. until 12:00 a.m.

42. During this period, Plaintiff was not paid proper minimum wages. During this period, Plaintiff was paid, in cash, at the rate of $95 per day ($95 per week) and worked eight (8) hours per week.

43. Beginning in or about January 2026 and continuing through in or about June 2026, Plaintiff worked two (2) days per week, and her work schedule consisted of seven (7) hours per day from 4:00 p.m. until 11:00 p.m.

44. During this period, Plaintiff was not paid proper minimum wages. During this period, Plaintiff was paid, in cash, at the rate of $12.67 per hour and worked fourteen (14) hours per week.

45. Beginning in or about July 2026 and continuing through the remainder of her employment on or about November 17, 2026, Plaintiff worked three (3) days per week, and her work schedule consisted of seven (7) hours per day from 4:00 p.m. until 11:00 p.m.

46. During this period, Plaintiff was not paid proper minimum wages. During this period, Plaintiff was paid, in cash, at the rate of $12.67 per hour and worked twenty-one (21) hours per week.

47. Upon paying Plaintiff her wages each week, Defendants failed to provide Plaintiff with a wage statement setting forth, among other things, Plaintiff's correct and accurate number of hours worked, hourly rate of pay, overtime rate of pay, gross wages, deductions, and net wages.

48. By failing to provide Plaintiff with a wage notice and accurate and weekly wage statements identifying her actual hours worked, Defendants prevented Plaintiff from determining and seeking payment for the precise number of unpaid hours and, therefore, prevented Plaintiff from promptly raising issues of underpayment with her employers. As a result, Plaintiff was harmed by being deprived of her income for longer than she would have been had he been able to raise her underpayment earlier.

49. Defendants knowingly and willfully operated their business with a policy of not paying the New York State minimum wage to Plaintiff.

50. Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff either the FLSA overtime rate (of time and one-half) or the New York State overtime rate (of time and one-half), in direct violation of the FLSA and New York Labor Law and the supporting federal and New York State Department of Labor Regulations.

51. At all relevant times, upon information and belief, and during the course of Plaintiff's employment, Defendants failed to maintain accurate and sufficient wage and hour records.

## STATEMENT OF CLAIM

### COUNT I
### [Violation of the Fair Labor Standards Act]

52. Plaintiff re-alleges and re-avers each and every allegation and statement contained in paragraphs "1" through "51" of this Complaint as if fully set forth herein.

53. At all relevant times, upon information and belief, Defendants were and continue to be an employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff is a covered individual within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

54. At all relevant times, Defendants employed Plaintiff within the meaning of the FLSA.

55. Upon information and belief, at least within each of the three (3) most recent years relevant to the allegations herein, RICO POLLO #2 RESTAURANT CORP. has had gross revenues in excess of $500,000.

56. Plaintiff handled or otherwise worked with goods or materials that were moved in or produced for commerce, such as, but not limited to things like food, kitchen equipment and utensils, cleaning supplies, etc.

57. Plaintiff was entitled to be paid at the rate of time and one-half for all hours worked in excess of the maximum hours provided for in the FLSA.

58. Defendants failed to pay Plaintiff overtime compensation in the lawful amount for all hours worked in excess of the maximum hours provided for in the FLSA.

59. At all relevant times, Defendants had and continue to have a policy and practice of refusing to pay overtime compensation at the statutory rate of time and one-

half to Plaintiff for all hours worked in excess of forty (40) hours per work week, which violated and continues to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

60. Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiff at the statutory overtime rate of time and one-half for all hours worked in excess of forty (40) hours per week when they knew or should have known such was due and that non-payment of minimum wages and overtime compensation would financially injure Plaintiff.

61. As a result of Defendants' failure to properly record, report, credit and/or compensate its employees, including Plaintiff, Defendants have failed to make, keep and preserve records with respect to each of its employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA, 29 U.S.A. §§ 201 *et seq.*, including 29 U.S.C. §§ 211(c) and 215(a).

62. Defendants failed to properly disclose or apprise Plaintiff of her rights under the FLSA.

63. As a direct and proximate result of Defendants' violation of the FLSA, Plaintiff is entitled to liquidated damages pursuant to the FLSA.

64. Due to the reckless, willful and unlawful acts of Defendants, Plaintiff suffered damages in an amount not presently ascertainable of unpaid overtime compensation, an equal amount as liquidated damages, and prejudgment interest thereon.

65. Plaintiff is entitled to an award of her reasonable attorneys' fees, costs and expenses, pursuant to 29 U.S.C. § 216(b).

**COUNT II**
**[Violation of the New York Labor Law]**

66. Plaintiff re-alleges and re-avers each and every allegation and statement contained in paragraphs "1" through "65" of this Complaint as if fully set forth herein.

67. Defendants employed Plaintiff within the meaning of New York Labor Law §§ 2 and 651.

68. Defendants knowingly and willfully violated Plaintiff's rights by failing to pay Plaintiff minimum wages in the lawful amount for hours worked.

69. Defendants knowingly and willfully violated Plaintiff's rights by failing to pay Plaintiff overtime compensation at the rate of time and one-half for each hour worked in excess of forty (40) hours in a workweek.

70. Defendants failed to properly disclose or apprise Plaintiff of her rights under the New York Labor Law.

71. Defendants failed to furnish Plaintiff with a statement with every payment of wages correctly listing the number of hours worked, rate of pay, overtime rate of pay, gross wages, deductions and net wages, in contravention of New York Labor Law § 195(3) and New York State Department of Labor Regulations § 146-2.3.

72. Defendants failed to keep true and accurate records of hours worked by each employee covered by an hourly minimum wage rate, the wages paid to all employees, and other similar information in contravention of New York Labor Law § 661.

73. Defendants failed to establish, maintain, and preserve for not less than six (6) years payroll records showing the hours worked, gross wages, deductions, and net

wages for each employee, in contravention of the New York Labor Law § 194(4), and New York State Department of Labor Regulations § 146-2.1.

74. Neither at the time of hiring, nor at any time thereafter, did Defendants notify Plaintiff of her hourly rates of pay and her regularly designated payday, in contravention of New York Labor Law § 195(1).

75. Due to Defendants' New York Labor Law violations, Plaintiff is entitled to recover from Defendants her unpaid minimum wages, unpaid overtime compensation, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to New York Labor Law §§ 663(1), 198.

76. Plaintiff is also entitled to liquidated damages pursuant to New York Labor Law § 663(1), as well as statutory damages pursuant to the New York State Wage Theft Prevention Act.

## PRAYER FOR RELEIF

**WHEREFORE,** Plaintiff, JOSEFINA RAMOS PENA, respectfully requests that this Court grant the following relief:

(a) An award of unpaid minimum wages due under the New York Labor Law;

(b) An award of unpaid overtime compensation due under the FLSA and New York Labor Law;

(c) An award of liquidated damages as a result of Defendants' failure to pay overtime compensation pursuant to 29 U.S.C. § 216;

(d) An award of liquidated damages as a result of Defendants' failure to pay minimum wages and overtime compensation pursuant to the New York Labor Law and the New York State Wage Theft Prevention Act;

(e) An award of statutory damages pursuant to the New York Labor Law and the New York State Wage Theft Prevention Act for Defendants' failure to provide mandatory wages notices and wage statements;

(f) An award of prejudgment and post-judgment interest;

(g) An award of costs and expenses associated with this action, together with reasonable attorneys' and expert fees; and

(h) Such other and further relief as this Court determines to be just and proper.

**JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues.

Dated: New York, New York
November 19, 2026

Respectfully submitted,

CILENTI & COOPER, PLLC
*Attorneys for Plaintiff*
60 East 42nd Street – 40th Floor
New York, NY 10165
T. (212) 209-3933
F. (212) 209-7102

By: *<u>/s/ Justin Cilenti</u>*
Giustino (Justin) Cilenti (2321)

**CONSENT TO SUE UNDER**
**FAIR LABOR STANDARDS ACT**

I, Josefina Ramos, am an individual currently or formerly employed by Rico Pollo and/or related entities. I consent to be a plaintiff in an action to collect unpaid wages.

Dated: New York, New York
October 14, 2026

Josefina Ramos